UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

07CR58S

**Report
&
Recommendation**

TYRONE MAURICE CHAMBERS,

Defendant.

The instant matter before the Court is defendant's omnibus motion (Docket No. 6[1]), in particular that portion of the motion to suppress evidence and his statements, requesting an evidentiary hearing, and seeking production from the probation department ("probation") of this Court.  The evidentiary hearing was held on August 29, 2007 (Docket Nos. 18, 21 (transcript of hearing)), and further submissions initially were due thirty days after receipt of the transcripts from that hearing (Docket No. 18), which was filed on February 27, 2008 (Docket No. 21). Following a conference on March 14, 2008, parties were given until April 18, 2008, to file their respective post-hearing submissions (Docket No. 23), and later this deadline was extended (on motion, see Docket Nos. 24, 25, 26,28, 29, 30).  Eventually, the parties submitted their respective

---

[1]In support of the motion defendant submits his motion, Docket No. 6; April 19, 2007, oral argument exhibits, Docket No. 8; and post-hearing memorandum, Docket No. 31.

In opposition, the Government submitted its Response, Docket No. 7, at 3-6; a further memorandum, Docket No. 11; and post-hearing memorandum, Docket No. 32.

Also considered herein is the transcript from the evidentiary hearing, Docket No. 21, and the exhibits admitted therein.

post-hearing submissions (Docket Nos. 31 (defendant), 32 (Government)) and the motion was deemed submitted on June 23, 2008.

## BACKGROUND

Defendant was indicted in a single count Indictment for being a felon in possession of a firearm, a .45 caliber Colt semiautomatic pistol, on January 12, 2007, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Docket No. 1, Indictment).  Defendant was arraigned on March 14, 2007, and pled not guilty (Docket No. 2).  Defendant filed his motion and the Government filed a timely response (Docket No. 7) and the motion was argued on April 19, 2007 (Docket No. 4). During argument, the Court orally granted defendant's requests for production from probation of certain items concerning its search policies for persons under supervised release, any Administrative Orders of this Court adopting probation search policies, a request to search this defendant and his residence, and an in camera review of defendant's probation file.  An Order was duly entered as to this disclosure (Docket No. 10) and then a second Order was issued for limited disclosure of the in camera documents (Docket No. 12).  Meanwhile, the Government filed a further responding memorandum (Docket No. 11).

*Prior Conviction and Conditions of Defendant's Sentence*

In January 2005, defendant pled guilty to a single count felony information of conspiracy to distribute cocaine (United States v. Chambers, No. 04CR180, Docket No. 14) and was sentenced to a term of imprisonment of thirty months followed by a term of supervised release of six years (United States v. Chambers, No. 07CR58, Docket No. 7, Gov't Response, at 1; Aug. 29, 2007, Hearing Gov't Ex. 1; see United States v. Chambers, No. 04CR180, Docket No. 27).

2

At issue in the present case is this term of supervised release and the conditions

thereunder.  One of the standard conditions imposed was for defendant to report any changes of

his address to probation within ten days of such change (United States v. Chambers,

No. 07CR58, Docket No. 7, Gov't Response, at 1; Docket No. 8, Def. Ex. D, Order of

Conviction, at page 3 of 6, Standard Conditions of Supervision No. 6; Aug. 29, 2007, Hearing

Gov't Ex. 1, at 3; see Docket No. 21, Tr. Aug. 29, 2007, at 8-9), with a special condition that

"defendant shall submit to a search of his person, property, vehicle, place of residence or any

other property under his control and permit confiscation of any evidence or contraband

discovered" (Docket No. 8, Def. Ex. D, Order of Conviction at page 4 of 6, fourth unnumbered

Special Condition of Supervision; Aug. 29, 2007, Hearing Gov't Ex. 1, at 4; Docket No. 21, Tr.

at 9-10).  Other conditions included that he answer truthfully all inquiries by probation and to

follow the instructions of probation officers and submit a truthful and complete written report to

probation every month (id., Def. Ex. D, Order of Conviction, at page 3 of 6, Standard Conditions

of Supervision Nos. 3, 2).

*Steps Leading to Search of Howard Street Premises*

On May 1, 2006, defendant was released from prison and admitted to supervised release.

(Docket No. 7, Gov't Response at 1-2.)  According to the Government, defendant listed as his

residence 237 Sherman Street, Buffalo, New York, but his probation case officer had difficulty

finding defendant there (id. at 2).

Probation attempted to confirm (among other things) defendant's current residence.  The

Government states that, in December 2006, the probation case officer received information that

defendant may have been residing either at 40 Howard Street or 285 Northland Avenue, both in

3

Buffalo (id.), and neither addresses were disclosed to probation by the defendant.  While

observing the Howard Street address, the case officer called defendant and asked where

defendant was.  Defendant replied that he was walking on William Street.  The probation officer

asked to meet defendant at the Sherman Street address (his grandmother's house) and he agreed.

(Id.)  Approximately five minutes later, the officer observed defendant leave the Howard Street

address and saw defendant enter a sports utility vehicle.  On December 19 and 21, 2006, and

January 5, 2007, defendant was observed leaving Howard Street or parking the same sports

utility vehicle at that address (id.).

On January 12, 2007, probation officers made contact with defendant at the Northland

Avenue address (the address of defendant's girlfriend) (id.), defendant was searched there,

leading to the discovery of the key that opened the Howard Street residence, but no contraband

was found on him.  The probation officer seized the keys from defendant (Docket No. 6, Def.

Motion at 4; Docket No. 7, Gov't Response at 2).  The Government justified defendant's search

on safety grounds and the special condition contained in his judgment authorizing such searches

(Docket No. 7, Gov't Response at 2-3).

Defendant alleges that, without any warrant or suspicion, probation officers searched

Howard Street and found a firearm under the couch.  (Docket No. 6, Def. Motion at 4.)

Defendant denies possession of the weapon (id.).  The Government states that, when questioned

about the Howard Street address, defendant denied any contact with that address for which he

just paid the rent.  A search of defendant's vehicle, again pursuant to the special conditions

imposed for his release, resulted in the seizure of a National Fuel Gas bill for 40 Howard in

defendant's name.  (Docket No. 7, Gov't Response at 3.)  When probation officers entered (with

4

the key seized from defendant) and searched 40 Howard, they found defendant's clothing and

documentation with defendant's name indicating that defendant resided there (id.).

Defendant's supervised release was revoked (United States v. Chambers, No. 04CR180,

Docket No. 30)[2], and defendant was indicted in this case on March 7, 2007 (United States v.

Chambers, No. 07CR58, Docket No. 1).

*Defense Motion*

Defendant argues that probation obtained permission from some unknown source to

search defendant, the Howard Street and Northland Avenue addresses.  He denies ever giving

probation permission to search him for either address as well as denies living at either address.

(Docket No. 6, Def. Motion at 4.)   Defendant was searched at the Northland address on

January 12, 2007, with no contraband found on him.  The probation officer found and seized

keys on defendant (id.; Docket No. 7, Gov't Response at 2).

In this motion, defendant argues that the search of his person and the seizure of the keys

was warrantless and without suspicion (Docket No. 6, Def. Motion at 4, 5).  He sought

production of the authority for probation to conduct this search and seizure–such as its policy

statement, adoption of that policy by this Court in a Standing or Administrative Order, and the

particular request to search defendant (id. at 4, n.2, 13), which was granted (Docket Nos. 10, 12).

He also seeks to suppress his statements made at Northland Avenue while he allegedly was in

---

[2]On defendant's motions, United States v. Chambers, No. 04CR180, Docket Nos. 32, 35, to dismiss the Violation Petition and Amended Violation Petition (see United States v. Chambers, No. 04CR180, Docket Nos. 28, 33), the Court granted in part, denied in part, United States v. Chambers, No. 04CR180, Docket No. 37,.  On June 25, 2007, the Court dismissed the Amended Violation Petition without prejudice, United States v. Chambers, No. 04CR180, Docket No. 47.

custody by probation officers (Docket No. 6, Def. Motion at 9).  Defendant contends that either probation lacked a policy or its policy deviated from or violated the model policy for such activities promulgated by the Administrative Office of United States Courts (see Docket No. 8, Ex. A).

Defendant also sought other disclosures and discovery that will be addressed in a separate Order (Docket No. 33).

Following argument of this motion, on April 19, 2007 (Docket No. 9), the Court entered an Order to compel the Government to produce materials relevant to probation's authority to conduct this type of search and seizure and authorization for this particular search.  The Order also called for production of defendant's probation file for in camera review to determine what could be produced to defendant.  (Docket No. 10.)  The Court then issued an Order outlining the parts of defendant's probation file that could be produced to him (Docket No. 12).

*Evidentiary Hearing*

At the evidentiary hearing of August 29, 2007 (Docket Nos. 18 (minutes), 21 (transcript)), the Government produced as witnesses three probation officers, Kathleen Trait, Scott Kawski, and William Burns; defendant did not call any witnesses.

Trait testified that she was defendant's probation case officer (Docket No. 21, Tr. at 6). Beginning in May 2006, she monitored defendant's compliance with the conditions of his supervised release.  She noted that she reviewed with defendant these conditions of his release (see Aug. 29, 2007, Hearing Gov't Ex. 2).

Defendant filed monthly supervisory reports from May 2006 to January 2007, indicating that he resided on Sherman Street, did not own or drive any vehicle, and worked minimum wage

jobs (Docket No. 21, Tr. at 19, 17-27; Aug. 29, 2007, Hearing Gov't Exs. 4A-4J).  Those reports

did not disclose owning a Jeep or residing at any place other than Sherman Street.  Trait noted

that defendant's reports for November and December 2006 included copies of his pay stubs

(Docket No. 21, Tr. at 23-25; Aug. 29, 2007, Hearing Gov't Exs. 4I, 4J).

Trait testified that she made regular home visits to Sherman Street and did not find

defendant there.  His grandmother who lived there stated that he was out for one reason or

another and would be back later.  (Docket No. 21, Tr. at 29.)  Trait then got a call from a

confidential informant who stated that defendant in fact lived in a red house on Howard Street,

driving a dark sports utility vehicle (id., Tr. at 28-30, 32-33).  On December 12, 2006, defendant

was seen exiting from 40 Howard Street and entering a Jeep parked there (id., Tr. at 30-32).

Over December 2006 and January 2007, Trait and other probation officers continued surveillance

at 40 Howard Street, observing defendant parking a Jeep at that address (id., Tr. at 35-36).  A

check of the license plate number of that vehicle revealed that it was registered to defendant, with

his address listed at Sherman Street (id., Tr. at 31-32; Aug. 29, 2007, Hearing Gov't Ex. 7).  Trait

suspected that defendant was not residing at Sherman Street, that he could not afford the Jeep on

his disclosed minimum wage salary, and that he possibly returned to illegal activities to afford

the vehicle and new apartment (Docket No. 21, Tr. at 36-38, 71-73).

Defendant notes that Trait testified that defendant would not have been in violation of the

terms of his supervised release if he was living at Howard Street rather than Sherman Street; the

violation occurred when defendant failed to complete the monthly supervision report truthfully as

to his address (Docket No. 31, Def. Post-Hearing Memo. at 2 n.2; see Docket No. 21, Tr., at 34,

38).  This is despite the standard condition of supervision, noted above, that defendant had to

7

notify probation of any changes in his residence (Docket No. 8, Def. Ex. D, Order of Conviction, at page 3 of 6, Standard Condition No. 6).

On December 15, 2006, Trait filed a Request to Search with her superiors (Docket No. 21, Tr. at 39-42; Aug. 29, 2007, Hearing Gov't Ex. 3), which was signed by the Senior United States Probation Officer and the Chief Probation Officer by December 27, 2006 (Aug. 29, 2007, Hearing Gov't Ex. 3). The Request sought to search 40 Howard, the vehicle, seeking "drugs, paraphernalia, guns" (id.). That search was conducted on January 12, 2007. Trait was present at the Northland Avenue address (Docket No. 21, Tr. at 83).

Probation officer Kawski next testified that he was part of the search of defendant and his property due to defendant not reporting his current residence and his use of a vehicle (id., Tr. at 82). Kawski was part of the team searching Northland Avenue property, staying with defendant during that search. Kawski testified that defendant opened the door at 285 Northland Avenue and he was told that he and that premises were to be searched (id., Tr. at 83). After handcuffing defendant, Kawski conducted the pat down search of defendant, finding the rent receipt and ring of keys (including keys to the Jeep and what turned out to be the front door lock for 40 Howard) (id., Tr. at 84-85; Aug. 29, 2007, Hearing Gov't Ex. 5). Defendant was questioned without being administered his Miranda rights and was patted down (Docket No. 21, Tr. at 85, 97-98, 107; see id., Tr. at 140 (Burns testimony)). Kawski found and confiscated (for officer safety and as evidence) the key ring (id., Tr. at 85). Defendant remained handcuffed during the search of the Northland address (id., Tr. at 76, 78, 83-84, 102-03), which probation officers testified took about an hour (in fact, remained cuffed until later placed under arrest) (id., Tr. at 101, 105). Defendant, however, was not placed under arrest during these searches (id., Tr. at 84). Kawski

testified that probation officers could not conduct searches independent of supervisor authorization (id., Tr. at 90).

Probation officer Burns testified that he was the search coordinator for this case and wrote a post-search memorandum memorializing the events (Aug. 29, 2007, Hearing Gov't Ex. 6).  He first surveiled 40 Howard when he learned that defendant was at the Northland Avenue address.  Burns sought (and obtained) verbal permission to extend the search to include Northland Avenue (since he was not aware of defendant's connection with that address until he was found there).  The keys on the ring were tested on the lock of the Jeep, with one key opening it.  (Docket No. 21, Tr. at 105, 108, 130.)  Inside the Jeep, probation officers found documents confirming that the vehicle was registered to defendant and utility bills for 40 Howard in defendant's name (id., Tr. at 103).  Burns later went back to 40 Howard Street, with the key ring seized from defendant.  Burns tested one of the keys at the front door of 40 Howard and entered the house.  (Id., Tr. at 108, 132.)  With a contraband-sniffing dog and others in the search team, Burns searched 40 Howard, finding in the kitchen a digital scale, more documents bearing defendant's name and attributable to 40 Howard.  In the living room, the dog detected something under the couch; the officers (including Burns) lifted the couch to find a cocked and loaded .45 caliber firearm.  A search of an upstairs bedroom found what appeared to Burns to be marijuana stems and seeds and his release documents, as well as items of clothing probation officers recognized were defendant's as well as a picture of defendant wearing a jacket hanging in that room.  (Id., Tr. at 132-34.)  Defendant was placed under arrest upon the location of the firearm (id., Tr. at 135-37).

Burns testified that the written authorization allowed probation officers to search defendant's person and that the condition that he answer truthfully all probation inquiries did not prohibit defendant from refusing to answer questions (id., Tr. at 139-40).

*Defendant's Statement*

Defendant seeks to suppress certain statements he made while being searched at 285 Northland.  He was asked about the key ring and rent receipt found in his pocket and defendant explained that he did not live at 40 Howard Street and the rent receipt was for his girlfriend.  He also denied that the keys to the Jeep were his and that the Jeep was in fact his girlfriend's (id., Tr. at 129-30).  According to the Government, these statements were made during the first five minutes of the search at 285 Northland (Docket No. 32, Gov't Post-Hearing Memo. at 9).

*Post-Hearing Arguments*

Defendant contends that, despite not having any indication of defendant's recent drug use, probation officer Trait sought a Request to Search for drugs, drug paraphernalia, and guns (Docket No. 31, Def. Post-Hearing Memo. at 2-3).  There was no indication that 40 Howard Street was a known drug or gang house or located in a high crime area, or had a history of 911 calls to justify a search (id. at 3).  Defendant argues that there was no reasonable suspicion that defendant was engaged in criminal activity or possessed contraband, therefore the search of his person and property was illegal (id. at 4-6).  Probation's search exceeded the authorized Request for Search by searching his person and searching 258 Northland (id. at 6).  Probation officers had no right to seize the keys (for 40 Howard Street) from defendant since they were not

contraband, hence anything found at 40 Howard Street should be suppressed as fruit of the poisoned tree, see United States v. Wong Sun, 371 U.S. 471, 487-88 (1963) (id. at 7).

The Government responds that the key ring was seized because the probation officer feared that the ring may contain a weapon (such as a knife or canister of pepper spray) (Docket No. 32, Gov't Post-Hearing Memo. at 7-8; see Docket No. 21, Tr. at 85-86, 108, 112-13 (testimony of Scott Kawski)).  The Government initially argues that defendant lacks standing to object to the items seized at 40 Howard Street because defendant has failed to assert a reasonable expectation of privacy at that address (Docket No. 32, Gov't Post-Hearing Memo. at 11).  The Government argues that an individual serving a term of supervised release has a diminished expectation of privacy under the Fourth Amendment (id. at 16-18, citing Sampson v. California, 547 U.S. 843 (2006); United States v. Reyes, 283 F.3d 446, 457-58 (2d Cir. 2002)).

## DISCUSSION

I.     Standing to Object to Search of 40 Howard Street

Before the Court reaches the propriety of the search of defendant, it must consider whether he has a reasonable expectation of privacy at 40 Howard Street in order to have standing to have evidence seized from that address suppressed.  In order for a defendant to assert that his Fourth Amendment rights were violated, he needs to allege that he had some expectation of privacy in the searched premises, see United States v. Salvucci, 448 U.S. 83 (1980); United States v. Sanchez, 846 F. Supp. 241, 243 (W.D.N.Y. 1994) (Heckman, Mag. J.) (Report & Recommendation), adopted, 846 F. Supp. 241 (Arcara, J.).  Defendant has the burden of establishing his standing, United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991).  In Osorio, the

Second Circuit held that an overnight guest had a legitimate expectation of privacy to give him standing when his host's residence was searched, id. at 40-41.

The Government argues that defendant lacked standing to challenge the search at 40 Howard Street, since defendant never stated in his moving papers that he resided there and the fact that defendant is charged with a possessory offense alone does not grant him standing to challenge the search (Docket No. 7, Gov't Response at 3-4; Docket No. 11, Gov't Memo. at 4-6; Docket No. 32, Gov't Post-Hearing Memo. at 11, 11-14).  The Government's position is inconsistent with the argument that defendant had control of 40 Howard Street to authorize probation to search it, the ultimate issue in his violation of the conditions of supervision.

Defendant initially argues that he has standing because it involved a residence the Government alleges was under his control (Docket No. 6, Def. Motion at 1 n.1), although he had denied having any interest or control over 40 Howard Street.  Such a statement that defendant had an interest in 40 Howard Street, however, may have been an admission to violating a condition of his supervised release and (for purposes of this action) justification for probation's search.

Under defendant's Order of conviction and the terms of his supervision, he "shall submit to a search of his . . . place of residence or any other property under his control" (Docket No. 8, Def. Ex. D, Order of Conviction at page 4 of 6).  Thus, to justify an otherwise warrantless search, probation and the Government need to show that defendant had the searched premises under his control.  Probation initially alleged that defendant resided at 40 Howard Street through their surveillance, subsequently confirmed by documents found in defendant's Jeep and his possession of keys to that address.

12

The search authorized by the Order of conviction grants him standing to contest when such a search has occurred.

II.     The Authority to Conduct this Search

The sole basis for probation's actions here is defendant's prior judgment of conviction and its conditions and special conditions for his release.  The Government argues that, as a result, defendant has a reduced expectation of privacy (Docket No. 32, Gov't Post-Hearing Memo. at 16, 21), whether he consented to the special conditions of release or not (id. at 20).  In 2005, Judge Skretny imposed a special condition of supervision that defendant authorize the search of his person, residence, and other property under his control.  As the Second Circuit held that same year:

> "Special conditions of supervised release must be 'reasonably related' to: (A) 'the nature and circumstances of the offense and the history and characteristics of the defendant'; (B) 'the need for the sentence imposed to afford adequate deterrence to criminal conduct'; (C) the protection of the public; and (D) the rehabilitative and medical care needs of the defendant. U.S.S.G. § 5D1.3(b)(1); accord 18 U.S.C. §§ 3583(d)(1) & 3553(a); United States v. Germosen, 139 F.3d 120, 131 (2d Cir. 1998).  Despite the use of the conjunctive in the Guidelines, 'a condition may be imposed if it is reasonably related to any one or more of the specified factors.'  United States v. Amer, 110 F.3d 873, 883 (2d Cir.1997) (internal quotation marks omitted).
> "A special condition must also involve 'no greater deprivation of liberty than is reasonably necessary for the purposes' of sentencing, and it must be 'consistent with any pertinent policy statements' in the Guidelines. 18 U.S.C. § 3583(d)(2), (3); U.S.S.G. § 5D1.3(b)(2); United States v. Balon, 384 F.3d 38, 42 (2d Cir.2004).  Accordingly, the district court's 'broad discretion in tailoring conditions of supervised release to meet the specific circumstances of a given case' is not 'untrammelled,' Germosen, 139 F.3d at 131 (internal quotation marks omitted), and we must 'carefully scrutinize unusual and severe conditions,' United States v. Sofsky, 287 F.3d 122, 126 (2d Cir.2002) (internal quotation marks omitted)."

United States v. Brown, 402 F.3d 133, 137 (2d Cir. 2005).

13

In his post-hearing memorandum, defendant argues that there was no reasonable suspicion that he was engaged in criminal activity or possessed contraband to justify conducting the search in the first place (Docket No. 31, Def. Post-Hearing Memo. at 4-6).

At issue here is the scope of probation's authority to search a defendant under the conditions for supervised release, based upon this special condition, absent a warrant or other Court Order.  The authority invoked by the Government to search defendant here is the combination of the special condition within his Judgment of conviction and the Request for Search under probation's policy.  The suspicion alleged in the Request is defendant's failure to note his possible new address and the search was to confirm whether he had a property interest in the Howard Street address.

The only safeguard of defendant's rights (or the rights of third parties, depending upon where probation officers conducted their search) is the prior, internal approval of the Supervising and Chief Probation Officers upon a request to search.  Aside from Judge Skretny's judgment imposing the special condition, there is no judicial determination whether defendant had control over a particular property to justify probation's search of it.  This written, internal check authorized the scope of the search (40 Howard Street, the vehicle).  The Government now contends that an oral application was made to search defendant at the Northland address where he was found and that the written authorization also included the right to search defendant's person.

Probation officers may conduct administrative searches, without a warrant, of an offender's person and property under limited circumstances, Griffith v. Wisconsin, 483 U.S. 868 (1987) (upholding warrantless search of probationer's home by probation officer as a condition

for probation).  The <u>Griffin</u> Court upheld such warrantless searches as part of the supervision within probation, deeming these searches to be "reasonable" within the Fourth Amendment because they were conducted "pursuant to a valid regulation governing probationers," 483 U.S. at 880.  The Court held that "a warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires," <u>id.</u> at 876, and the delay inherent in obtaining a warrant would make it more difficult for probation officers to respond quickly to evidence of misconduct, <u>id.</u>  While not police officers, the probation officers there were employees of the Wisconsin Department of Health and Social Services who were "supposed to have in mind the welfare of the probationer" referred to in its regulations as a "client," <u>id.</u>

A similar regime applicable to persons under supervised release pursuant to the Order of conviction applies here.  While under supervised release, defendant had a diminished expectation of privacy as opposed to a person not subject to a judgment with those release conditions, <u>United States v. Reyes</u>, 283 F.3d 446, 451-52 (2d Cir.), <u>cert. denied</u>, 537 U.S. 822 (2002); <u>see United States v. Lifshitz</u>, 369 F.3d 173, 179-82 (2d Cir. 2004).  The Second Circuit in <u>Lifshitz</u>, in reviewing the Fourth Amendment case law for probationary searches, 369 F.3d at 179-82, upheld the general condition of computer monitoring as a supervised release condition but found the particular condition was overbroad, 369 F.3d at 190-93.  The Second Circuit noted that these cases required some form of "'individualized suspicion,' whether phrased as 'reasonable grounds' or 'reasonable suspicion,'" <u>id.</u> at 179.  Citing the Supreme Court's decision in <u>United States v. Knights</u>, 534 U.S. 112 (2001), the Second Circuit in <u>Lifshitz</u> stated that "In <u>Knights</u>, the Court determined that a search of a probationer's apartment based upon reasonable suspicion and

conducted pursuant to a probation order mandating that he 'submit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer,' id. at 114 (brackets omitted), satisfied the Fourth Amendment." Lifshitz, supra, 369 F.3d at 180. Dispensing with the "special needs" analysis of Griffin, the Knights Court "held that 'the search . . . was reasonable under our general Fourth Amendment approach of "examining the totality of the circumstances," with the probation search condition being a salient circumstance.' [Knights, 534 U.S.] at 118 (citation omitted)," Lifshitz, supra, 369 F.3d at 180, upholding that probationer's search as being reasonable when balancing the legitimate government interest with the person's privacy recognizing the diminished privacy expectation of those on probation or on supervised release, Knights, supra, 534 U.S. at 118-20; Lifshitz, supra, 369 F.3d at 180.  The Knights Court, however, held that the particular search at issue met Fourth Amendment requirements without addressing the broader issue of whether the search condition condoned warrantless searches generally, Knights, supra, 534 U.S. at 120 n.6; see Lifshitz, supra, 369 F.3d at 180.

The Second Circuit then stated

"Two conclusions emerge from Griffin and Knights.  Probationary searches– whether for law enforcement or probationary purposes–are acceptable under Knights if based upon reasonable suspicion (or potentially a lesser standard).  Furthermore, under the 'special needs' doctrine articulated in Griffin, searches for probationary purposes will be upheld if authorized by a law that is in itself reasonable.  Griffin does not, however, itself elaborate criteria for determining the reasonableness of a regulation."

Lifshitz, supra, 369 F.3d at 181.

Defendant's argument, however, would require probation to have probable cause prior to conducting searches authorized by defendant's Order of conviction.  Only the United States Court of Appeals for the Ninth Circuit has required parole officers to establish probable cause that a parolee resides at a certain premises before conducting a parole condition search of that property, Motley v. Parks, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc); see United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006).  But one judge from the Ninth Circuit recognizes that this Circuit law is not consistent with United States Supreme Court precedent, Howard, supra, 447 F.3d at 1268 (Noonan, J., concurring dubitante) (citing Knights, supra, 534 U.S. at 119, 120).  Judge Noonan noted that the majority did not take into account that defendant's diminished expectation of privacy as a probationer and the Government's interest in not having that defendant possess firearms, id. at 1269.

Probation in this case had reasonable suspicion, from their surveillance and the confidential informant, that defendant was not residing at the premises he disclosed to them in his periodic reporting and that he may be at the Howard Street address.  The search to confirm defendant's current residence was justified by this suspicion and the Order of conviction which imposed the supervised release conditions that (a) defendant notify probation of his current address and (b) subjected him and property under his control to warrantless searches by probation.

III.    Whether Probation Followed Its Internal Procedure

Next, defendant's objections stem from his conclusion that probation did not follow its own internal procedures for conducting searches, namely keeping defendant in handcuffs for over an a hour during the course of the search, not having a written confirmation authorizing the

17

search of the Northland Avenue address, or clear authorization to search defendant's person. Defendant argues that the model policy for probation officers from the Judicial Conference of the United States disfavors searches by Probation officers (Aug. 29, 2007, Hearing Def. Ex. A). The Government counters that the applicable and appropriate policy is the District's policy (Aug. 29, 2007, Hearing Def. Ex. B), which probation followed in obtaining authorization to commence the search (Docket No. 32, Gov't Post-Hearing Memo. at 22).

Under probation's policy (see Aug. 29, 2007, Hearing Def. Ex. B), all probation searches require administrative review and approval by the Senior Probation Officer and the Chief U.S. Probation Officer. The model Search and Seizure Guideline policy as adopted by the Judicial Conference and the United States Parole Commission's policy on searches serve as the basis for probation's enacted policy. (Id. at 1.) Searches are authorized if there is reasonable suspicion that the offender has contraband (id. at 4). If a written request is impractical, then oral application to conduct a search may be made and approved, but such application must be reduced to writing and "under no circumstances will an officer proceed with a search of any kind without first receiving the proper authorization" (id. at 4-5). The probation officer may "temporarily" restrain an offender by handcuffs "for safety purposes" during searches (id. at 6).

The issue, however, is the underlying basis for that search and not whether probation officers followed the letter of their internal policy. Even if they deviated from that policy, defendant lacks standing to contest it. Probation's internal practices and policies do not create constitutional grounds for defendant to contest a search conducted pursuant to the special condition set forth in his judgment of conviction or to suppress evidence obtained during such a search. The exclusionary rule does not apply to warrantless administrative searches even if the

18

underlying basis for that search is later determined to be unconstitutional and reliance upon that basis (here a Court Order) is objectively reasonable, see Illinois v. Krull, 480 U.S. 340, 349-55 (1987) (statute authorizing warrantless administrative searches); see also United States v. Leon, 468 U.S. 897 (1984) (upholding search under search warrant ultimately found to lack probable cause); Samson, supra, 547 U.S. 843 (parole condition allowing warrantless searches upheld); Virginia v. Moore, 553 U.S. ___, 128 S.Ct. 1598, 1607-08 (2008) (upholding search incident to arrest where the arrest was otherwise unlawful under state law).

Thus, probation had reasonable suspicion and sufficient authority from defendant's Order of conviction to search him and property probation contends he controlled, if only for the limited purpose of determining whether that property was in fact under defendant's control. The subsequently found weapon (and other evidence) therefore **should not be suppressed** as evidence against defendant.

IV.     Defendant's Statements

Defendant seeks to suppress the statements he made while probation conducted the search of him at Northland Avenue, namely about the key ring, the Jeep key, and the rent receipt for 40 Howard Street found on defendant's person. Defendant initially argued that he was under custodial interrogation and was not advised of his Miranda warnings, hence his statements should be suppressed, and that the Government bears the burden of proving compliance with Miranda by a preponderance of the evidence, see United States v. Diaz, 891 F.2d 1057, 1060 (2d Cir. 1989) (Docket No. 6, Def. Motion at 9-10).

The Government argues, first, that defendant as a probationer does not enjoy the absolute liberty enjoyed by other citizens, see Knights, supra, 534 U.S. at 119 (Docket No. 7, Gov't

19

Response at 6), and that he was subject to a supervision condition of answering truthfully

probation department questions.  The questioning here was routine request for information that

do not require <u>Miranda</u> warnings, <u>see</u> <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984) (admission of

second offense to probation officer in probation officer's office).  (<u>Id.</u>)  The Government states

that he was handcuffed (first behind his back and then uncuffed and re-cuffed in the front)

pursuant to probation policy for officer safety and defendant's safety during the conduct of the

search (Docket No. 32, Gov't Post-Hearing Memo. at 9, 23-24), that he was cuffed for five

minutes in a private residence, that he was not under arrest, and that a reasonable person would

have concluded that they were not in custody in such circumstances, but that defendant was not

under arrest while detained (<u>id.</u> at 23-26).  Applying the Fourth Amendment factors recognized

by the Second Circuit in <u>United States v. Newton</u>, 369 F.3d 659, 673-74 (2d Cir.), <u>cert. denied</u>,

543 U.S. 947 (2004), for determining whether a search rises to the level of <u>Miranda</u> custody–the

duration of the stop; its public or private setting; the number of participating law enforcement

officers; the risk of danger presented to the person stopped; and the display or use of physical

force against the person stopped, including firearms, handcuffs–the Government concludes that

defendant here was not under restraint associated with formal arrest (<u>id.</u> at 25-27).

This portion of defendant's motion is at the intersection of the Fourth and Fifth

Amendments, whether an investigative stop and search rises to the level of <u>Miranda</u> custody, <u>cf.</u>

<u>Newton</u>, <u>supra</u>, 369 F.3d at 673, when the searching officers ask questions of the searched

defendant.  Under the Fourth Amendment, the police may detain a person during the conduct of a

search and that detention does not constitute an arrest for seizure of person for Fourth

Amendment purposes, <u>Michigan v. Summers</u>, 452 U.S. 692, 705 (1981); <u>United States v.</u>

Morales, 611 F. Supp. 242, 245 (S.D.N.Y. 1985).  The test to determine whether a person is in custody is an objective one that considers the totality of circumstances, Newton, supra, 369 F.3d at 672 (factors of whether person believed that he was free to leave and whether a person believed that his curtailed freedom of action was due to a formal arrest) (Docket No. 32, Gov't Post-Hearing Memo. at 24).

Fourth Amendment reasonableness of the seizure of a defendant is not the standard for resolving Miranda custody challenges, id. at 673; see United States v. Ali, 68 F.3d 1468, 1473 (2d Cir. 1995).  "Whether [a] 'stop' was permissible under Terry v. Ohio . . . is irrelevant to the Miranda analysis.  Terry is an 'exception' to the Fourth Amendment probable cause requirement, not to the Fifth Amendment protections against self-incrimination," Newton, supra, 369 F.3d at 673 (quoting Ali, supra, 68 F.3d at 1463).

"Miranda's warning requirements apply only to 'custodial interrogation,'" Newton, supra, 369 F.3d at 669 (quoting Miranda, supra, 384 U.S. at 444, 477).  Restraint is custodial when there is a formal arrest or the restraint upon freedom of movement is akin to a formal arrest, see California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam), focusing on "whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest," Newton, supra, 369 F.3d at 673 (quoting Ali, supra, 68 F.3d at 1472, internal quotation marks omitted).

The Court must examine all the circumstances surrounding the interrogation to determine whether it was custodial, Stansbury v. California, 511 U.S. 318, 324 (1994) (per curiam); see Newton, supra, 369 F.2d at 670.  A coercive environment alone, however, does not make a non-

21

custodial situation custodial to require <u>Miranda</u> warnings, <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977); <u>see</u> <u>Newton</u>, <u>supra</u>, 369 F.3d at 671.

A probationer does not lose his Fifth Amendment right against self-incrimination, <u>Murphy</u>, <u>supra</u>, 465 U.S. at 426, but the obligation of a probationer to answer truthfully a probation officer's questions does not convert otherwise voluntary statements into compelled ones, <u>id.</u> at 427.  A detention incident to such a search may "constitute[] such a deprivation of his freedom of action as to render him 'in custody.' <u>Miranda</u>, supra, 384 U.S. at 444; <u>see</u> <u>Orozco v. Texas</u>, [394 U.S. 324 (1969)] (custodial interrogation in defendant's bedroom)," <u>Morales</u>, <u>supra</u>, 611 F. Supp. at 245, and render statements made under those circumstances subject to <u>Miranda</u> warnings.

In <u>Newton</u>, the defendant appealed the denial of a suppression motion following a parole violation search at his home.  Six police and parole officers entered defendant's apartment, and he was handcuffed while they entered and searched the apartment, but defendant was told that he was not under arrest when the officers began questioning him without being advised of his rights, 369 F.3d at 675-76, 662, 663-64.  The Second Circuit found that those circumstances (especially the fact that defendant was handcuffed during the search and questioning) a reasonable person in defendant's shoes would conclude that they were under an arrest-like restraint, <u>id.</u> at 676; <u>see</u> <u>id.</u> at 662, and thus subject to custodial interrogation, <u>id.</u>, but the public safety exception to <u>Miranda</u> permitted the questioning, <u>id.</u>  The Circuit Court cited traffic stop cases, with their different Fourth Amendment standard, in establishing the Fifth Amendment/<u>Miranda</u> standard, that is, whether a reasonable person would understand his detention was not likely to be temporary or brief and whether the person during that stop felt that he was completely at the mercy of the

police, id. at 675 (quoting Berkemer v. McCarty, 468 U.S. 420, 437, 438 (1984)).  The Second

Circuit, in Newton, found that the use of handcuffs, even for safety reasons while the search was

being conducted, made that situation akin to a formal arrest, 369 F.3d at 675-76.  "Handcuffs are

generally recognized as a hallmark of a formal arrest," id. at 676 (citing New York v. Quarles,

467 U.S. 649, 655 (1984)).  A reasonable person in that situation would believe that his detention

in handcuffs would not be temporary and brief and that he was now at the mercy of the detaining

officers.  Telling a handcuffed suspect that he was not under arrest does not have the same weight

as when the suspect is not restrained and is told the same thing, id.

Therefore, defendant was under custodial interrogation when he was questioned during

the search of his person and the Northland Avenue apartment.  The statements he gave while

handcuffed and not advised of his rights **should be suppressed**.

The Government here does not invoke the public safety exception to Miranda, see

Quarles, supra, 467 U.S. at 658-59; cf. Newton, supra, 369 F.3d at 677-79, since the statements

at issue were questions about non-lethal items found on defendant's person–the key ring with

keys to the Jeep and the Howard Street apartment, and the rent receipt.  Even if this exception

were invoked, the questioning here did not relate to any necessity to protect the probation officers

or the public from any immediate danger, cf. Quarles, supra, 467 U.S. at 659 n.8; Newton, supra,

369 F.3d at 677-78.  The questions were focused on establishing or confirming defendant's

residence, not the imminent danger that the public safety exception excuses.

\* \* \*

Thus, defendant's seized items, such as the keys, the documents the Government may

contend confirms his residence at Howard Street, and the firearm at issue in this case, **should not**

**be suppressed** despite the warrantless search and seizure.  Defendant's statements while that search was being conducted and while defendant was handcuffed and not advised of the <u>Miranda</u> warnings, however, **should be suppressed** because defendant in that circumstance was in custody while being interrogated.  This is not meant to suggest that probation cannot continue the practice of securing searched probationers by handcuffing them while conducting searches. Rather, if that probationer is being questioned while handcuffed during such a search, he or she must be advised of their rights if those statements are to be used against them in a subsequent prosecution.

### CONCLUSION

Based upon the above, it is recommended that the portion of defendant's omnibus motion seeking to suppress evidence based upon the conduct of the Probation Department search and seizure (Docket No. 6) be **denied**, but defendant's statements **should be suppressed** and defendant's motion to that effect (Docket No. 6) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
July 21, 2008